IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MAYBORN (UK) LIMITED, MAYBORN USA, INC., MAYBORN GROUP LIMITED,<br><br>               Plaintiffs,<br><br>   v.<br><br>NUTRITS, LTD.,<br><br>              Defendant. | No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs hereby bring this complaint for patent infringement against Defendant Nutrits, Ltd. ("Nutrits"), and alleges as follows:

## NATURE OF THIS ACTION

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1, et seq.

2. Nutrits has infringed (literally and/or under the doctrine of equivalents) and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe U.S. Patent No. 11,730,680 ("the '680 patent").

3. A true and correct copy of the '680 patent is attached as Exhibit A.

## PARTIES

4. Mayborn USA, Inc. is a corporation organized under the laws of the State of New York with a principal place of business at 1010 Washington Boulevard, Stamford, Connecticut 06901.

5. Mayborn (UK) Limited is a corporation organized and existing under the laws of England with a principal place of business at Balliol Business Park, Benton Lane, Newcastle upon Tyne, United Kingdom, NE12 8EW.

1

6. Mayborn Group Limited is a corporation organized and existing under the laws of England with a principal place of business at Balliol Business Park, Benton Lane, Newcastle upon Tyne, United Kingdom, NE12 8EW.

7. Mayborn USA, Inc., Mayborn (UK) Limited, and Mayborn Group Limited are collectively referred to herein as "Mayborn."

8. Upon information and belief, Defendant Nutrits is a company organized and existing under the laws of Israel with a principal place of business at 3 Sdeneot, Herzliya, Israel 4672830.

## JURISDICTION AND VENUE

9. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. 1331 and 1338(a).

10. The Court has personal jurisdiction over Nutrits.

11. The personal jurisdiction inquiry is three-part: (1) whether Nutrits has committed an act constituting business in Texas under Texas statute; (2) whether the claim arises out of that act; and (3) whether asserting jurisdiction comports with due process and does not offend traditional notions of fair play and substantial justice.

12. Under the first prong of the jurisdiction inquiry, Nutrits has committed an act constituting business in Texas.  Under Texas law, conducting business includes "commit[ting] a tort in whole or in part in [the] state." V.T.C.A. §17.042.

13. Nutrits's Plastic Breastmilk Baby Bottle and Flexy Silicone Baby Bottle marketed and sold under Nutrits-owned trademark, Nanobebe, and substantially similar products and components thereof constitute the "Accused Products" in this action.

14. On information and belief, the Accused Products in this action are marketed under the trademarked name "Nanobebe" and sold in national retailers such as Walmart and Amazon, including online sales with shipping available in Texas.

15. On information and belief, the Accused Products in this action suit are sold at brick-and-mortar stores within Texas, including brick-and-mortar sales within this district.

16. Exhibit B is a true and correct copy of a printout from the webpage of Walmart.com, showing Accused Products available for pickup at a Walmart in Tyler, Texas.

17. Nutrits owns the intellectual property associated with the marketing and sales of the Accused Products under the Nanobebe brand.

18. Nutrits's ownership includes the trademark "Nanobebe" itself.

19. On information and belief, Ayal Lanternari is Chairman of Nutrits.

20. On information and belief, Ayal Lanternari is Chairman of Nanobebe US Inc., which is Nutrits's wholly-owned US subsidiary.

21. On information and belief, Nutrits and Nanobebe US Inc. share other executives in addition to Ayal Lanternari.

22. Nutrits, through its Chairman Ayal Lanternari, submitted a sworn declaration to the USPTO that Nutrits "is using" the Nanobebe mark in connection with the US sales and distribution of baby bottles and nipples "by applying it to goods or using it in advertising."

23. Exhibit C is a true and accurate copy of the Statement of Use filed by Nutrits during the prosecution of its trademark "NANOBÉBÉ," including a declaration signed by Ayal Lanternari.

24. Thus, the Accused Products here are sold and advertised in Texas using Nutrits-owned trademarks, and Nutrits has sworn to the USPTO that Nutrits "is using" the Nanobebe

trademark in U.S. commerce in connection with baby bottles and nipples by affixing the mark to the Accused Products and using the mark in advertising of the Accused Products.

25. Moreover, on information and belief, the overlap of executives and interconnection between Nutrits and Nanobebe US Inc. is such that even if Nanobebe US Inc. purports to be the seller of the Accused Products in the United States, Nutrits has injected these products into the stream of commerce, knowing and intending that they will be sold in the United States, and has active involvement and direction in those sales such that Nutrits is committing the tort of patent infringement in Texas.

26. Under the second prong of the jurisdiction inquiry, Mayborn's patent infringement claim here arises from the tort of patent infringement described above and serves as the basis for Mayborn's patent infringement suit.

27. Finally, under the third prong of the personal jurisdiction inquiry, this Court's exercise of personal jurisdiction over Nutrits comports with the requirements of due process.

28. Nutrits has injected the Accused Products into the Texas market.

29. Nutrits has advertised the Accused Products in Texas.

30. In *Huchel v. Sybron Corp.*,[1] the court remarked that "it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products." Additionally, in *Phibro-Tech, Inc. v.*

---

[1] *Huchel v. Sybron Corp.*, No. H-79-2047, 1980 WL 30343, at *2 (S.D. Tex. Oct. 17, 1980) (quoting *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143, 184 USPQ 387, 392 (7th Cir. 1975))

*Osmose Holdings, Inc.*,[2] the court held that the defendant, a foreign parent corporation, directed the infringing activities of its American subsidiary entity, and therefore found that the parent corporation had minimum contacts with the state.

31. On information and belief, Nutrits has similarly concocted a scheme through its wholly-owned subsidiary, Nanobebe US Inc., whereby Nutrits manufactures the Accused Products, and directs the infringing activities of its U.S. subsidiary while attempting to avoid liability for their importation into, distribution, and sales throughout the United States.

32. In view of the foregoing, all three prongs of the personal jurisdiction inquiry are satisfied and this Court has personal jurisdiction over Nutrits.

33. Venue is proper in this district because Nutrits is a foreign entity. 28 U.S.C. § 1391(c).

## BACKGROUND

34. Mayborn has been in the business of creating, making, and selling baby products and delighting parents for nearly 60 years, starting with the original Tommee Tippee no-spill cup in the mid-sixties. Since then, Mayborn's push for innovation to solve real issues faced by real parents the world over has made Tommee Tippee the #1 baby brand in the United Kingdom and Australia, and in the decade since the brand was launched in the United States, Tommee Tippee became a major player and continues to be a growing baby brand in the United States.

35. A shining example of Mayborn's innovation is the Closer to Nature ("CTN") line of baby bottles. The CTN bottles revolutionized the baby industry by being the first to have a real breast-like shape.

---

[2] *Phibro-Tech, Inc. v. Osmose Holdings, Inc.*, No. 5:06-CV-77-DF, 2006 WL 8441241, at *3 (E.D. Tex. Dec. 5, 2006)

36.     Prior to Mayborn's invention of the most-breast-like bottle, baby bottles had a step-like design where the nipple connected with the collar in a traditional shape that did not in any way resemble a breast. Mayborn's invention reimagined the traditional baby bottle into a bottle that more closely resembles a human breast. The wide breast-like nipple and collar design with an ultrasensitive built-in air vent makes switching between breast and bottle feeding simpler than with traditional bottles. The overall breast-like shape is easy for babies to latch on to, feels more like skin, and mimics the natural flex and movement of a mom's breast for a comfortable feed.



| Traditional bottles | Mayborn's breast-like bottle |
|---|---|

37.     The CTN bottle is loved by parents and babies alike, winning multiple awards and quickly becoming the gold standard for baby bottle designs. Since the CTN bottle design was launched, the baby bottle industry has moved away from the traditional shape to copy Mayborn's more breast-like design.

38. The '680 patent is a reflection of the breadth of Mayborn's dedication and investment in the technology and development of innovative products that support and delight parents in the rollercoaster ride of raising a baby.

39. The '680 patent is a continuation of a patent family that claims priority to June 29, 2004.

40. On August 22, 2023, the '680 patent was duly and legally issued and titled "Baby Bottle With Flexible Nipple Regions."

41. Mayborn (UK) Limited owns the entire right, title, and interest to the '680 patent.

42. Pursuant to 35 U.S. Code § 287, Mayborn marks its products to provide notice of Mayborn's patent rights in the '680 patent to the public.

43. On information and belief, without license or permission from Mayborn, Nutrits has infringed, literally and/or under the doctrine of equivalents, and continues to infringe, the '680 patent by engaging in acts constituting infringement under 35 U.S.C. § 271, including but not necessarily limited to one or more of making, using, selling and offering to sell, in the United States, and importing into the United States, baby bottles having Mayborn's breast-like shape, design, and functionality.

44. In particular, Nutrits's Plastic Breastmilk Baby Bottle and Flexy Silicone Baby Bottle marketed and sold under the Nutrits-owned trademark, Nanobebe, and substantially similar products and components thereof (the "Accused Products") infringe at least claim 1 of the '680 patent.

45. In the declaration signed by Ayal Lanternari in his capacity as Chairman of Nutrits, Mr. Lanternari swore to the USPTO that Nutrits "is using" the Nanobebe mark in connection with baby bottles and nipples "by applying it to goods or using it in advertising." See Exhibit C.

46. On information and belief, Nutrits is the shipper, wholesaler, and the manufacturer of Accused Products shipped to the United States. *See* Exhibit D (the "Panjiva Data").

47. On information and belief, Nutrits directly infringes the '680 patent.

48. First, Nutrits admits in the aforementioned declaration to the USPTO that Nutrits is selling and offering to sell Nanobebe-branded baby bottles and nipples in the United States, which includes the Accused Products. Selling and offering to sell the Accused Products in the United States is an act of direct infringement. *See* 35 U.S.C. 271(a).

49. Second, on information and belief, Nutrits imports the Accused Products to the United States. This is evidenced by the aforementioned Panjiva Data. Nutrits's declaration to the USPTO is also evidence that Nutrits is the importer of the Accused Products, as Nutrits has admitted therein to being the seller. Importing the Accused Products into the United States is also an act of direct infringement. *See* 35 U.S.C. 271(a).

50. Third, on information and belief, Nutrits is liable for Nanobebe US Inc.'s actions under an agency or veil piercing theory of liability.

51. On information and belief, Nutrits (a) has admitted to selling and offering the Accused Products for sale, (b) has imported Accused Products into the United States, (c) has a direct financial interest in Nanobebe US Inc. as a wholly-owned subsidiary of Nutrits, (d) manufactures and/or wholesales the Accused Products, and ships the products to Nanobebe US Inc., (e) owns the intellectual property rights in the trademarks and copyrights associated with the Accused Products, (f) shares at least one corporate officer with Nanobebe, and (g) is aligned with Nanobebe on strategy for the sale of the Accused Products. These facts more than constitute a "continuing connection in regard to the infringing activity." Nutrits's involvement in any

infringement by Nanobebe U.S., Inc. therefore extends far beyond the traditional parent-subsidiary relationship and into the realm of agency.

52. Here, Nanobebe U.S. Inc. (a) is wholly-owned by Nutrits, (b) shares at least one corporate officer and may in fact share other executives, (c) has no ownership of the intellectual property associated with Nanobebe's products, including the very name "Nanobebe" itself. On information and belief, corporate formalities and separation between the companies is minimal or non-existent. Thus, Nutrits is liable for the acts of Nanobebe under a veil piercing theory.

53. On information and belief, Nutrits induces and continues to induce infringement of the '680 patent by others. For example, Nutrits takes active steps to promote and encourage the sale of the Accused Products by Nanobebe U.S. Inc. and third parties.

54. Nutrits takes specific steps to actively induce others—such as, for example, retailers and customers—to use and sell the Accused Products. For example, and without limitation, on information and belief, Nutrits actively induces direct infringement of the '680 patent by others by promoting, instructing, offering, and encouraging others to use and sell the Accused Products. Furthermore, Nutrits also actively promotes the breast-like nature of the Accused Products including, for example and without limitation, by way of authorized retailers, customer service and sales representatives, and/or its internet sales websites. Furthermore, Nutrits also actively promotes the breast-like nature of the Accused Products including, for example and without limitation, by way of authorized retailers, customer service and sales representatives, and/or its internet sales websites. Such active promotion includes advertising that the Accused Products feature a "natural mom-like feel" and "smooth transitions between breast and bottle" and promoting that "[b]aby instinctively connects to the bottle's breast shape." And, on information and belief, Nutrits knows or should know that such sales and promotions actively

induce others to directly infringe at least claim 1 of the '680 patent, including for example, by prompting them to sell or use the Accused Products in an infringing manner.

55. As another example, Nutrits provides and/or authorizes the providing of instruction manuals, product manuals, and other materials (*e.g.*, with the sale of a product and/or offered on its website) for customers and other users of the Accused Products that show how to assemble the Accused Products.   On information and belief, Nutrits knows or should know that such materials and instructions actively induce others to directly infringe at least claim 1 of the '680 patent including by instructing them to use the Accused Products.

56. Furthermore, Nutrits and/or its authorized retailers operate stores throughout the United States, such as Walmart and Target.   These stores include a Walmart in this District, that upon information and belief, sells, promotes, and instructs the use of the Accused Products.

57. On information and belief, Nutrits is aware of the '680 patent either by constructive notice as a competitor in the baby products industry, due to Mayborn's marking of its patents to the public, or at least as of August 22, 2023, when the '680 patent issued following notice to Nutrits of the pending issuance earlier that month.

58. Finally, on information and belief, the acts alleged in paragraphs 1-57 are continuing in nature such that Nutrits is subject to jurisdiction and liable for infringement now and throughout the pendency of this action.

## COUNT ONE
### (Infringement of U.S. Patent No. 11,730,680)

59. Mayborn incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

60. In violation of 35 U.S.C. § 271, Nutrits has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '680 patent, including but not

limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '680 patent. Such unlicensed products include the Accused Products. On information and belief, Nutrits continues to ship Accused Products to the United States, advertise and sell Accused Products using Nutrits's trademark, and maintain its Nanobebe trademark. Therefore, Nutrits continues to infringe and induce infringement of the '680 patent despite prior notice to Nutrits of the issue date and claims of the '680 patent.

61. Claim 1 of the '680 patent recites: A baby bottle comprising: a) a vessel with an opening comprising a rim; and b) an assembly configured to mount and seal over the vessel comprising: i) a collar configured to removably couple to a nipple and mount over the vessel opening; and ii) a nipple having a teat with an aperture, a base, an areola portion between the teat and the base, and a flange configured to seal over the vessel rim, iii) wherein the flange extends from a substantially cylindrical lower portion of the base to define the outermost nipple circumference, and iv) wherein an air vent projects internally into the nipple interior below the teat, and v) wherein the nipple and collar together define a breast shape comprising a teat projecting from a domed configuration that extends outwardly and downwardly to a widest circumferential edge of the collar.

62. The Accused Products are marketed and sold as baby bottles.

Product Description



Screenshot from https://www.amazon.com/Nanobebe-Silicone-Bottles-Anti-Colic-Non-Collapsing/dp/B08C5K4XTD/ref=sr_1_5?crid=2PEAGYF4ISOQ4&keywords=nanobebe+bottles&qid=1692561831&sprefix=%2Caps%2C289&sr=8-5



Screenshot from https://www.amazon.com/ Breastmilk-Innovation-Breastfed-Breastfeeding-Newborn-Breast-Breast-Milk/dp/B07CXSBNM4/ ref=sr_1_6?crid=2PEAGYF4ISOQ4 &keywords=nanobebe+bottles&qid=1692561831&sprefix=%2Caps%2C289&sr=8-6.

63.     The Accused Products have a vessel with an opening comprising a rim and an assembly configured to mount and seal over the vessel comprising a collar configured to removably couple to a nipple and mount over the vessel opening.



Flexy Silicone Bottle – Instruction Manual at https://www.nanobebe.com/pages/product-instruction-manuals.



Breastmilk Bottle – Instruction Manual at https://www.nanobebe.com/pages/product-instruction-manuals.

64. The nipple of the Accused Products has a teat with an aperture, a base, an areola portion between the teat and the base, and a flange configured to seal over the vessel rim, wherein

13

the flange extends from a substantially cylindrical lower portion of the base to define the outermost nipple circumference.



66. The Accused Products include an air vent that projects internally into the nipple interior below the teat.



66. The nipple and collar of the Accused Products together define a breast shape comprising a teat projecting from a domed configuration that extends outwardly and downwardly to a widest circumferential edge of the collar.



67. On information and belief, Nutrits has had knowledge of the issuance of the '680 patent and that its activities would infringe the '680 patent before the filing of this action. Nutrits received such notice in connection with ongoing litigation between Mayborn and Nanobebe.

68. Mayborn repeatedly informed Nanobebe and Mr. Lanternari of the pending issuance '680 patent, including most recently an August 10, 2023, notice through Nanobebe US Inc.'s counsel of the issue date and claims of the '680 patent, accompanied by claim charts detailing infringement of the Accused Products.

69. As Chairman of Nutrits, Mr. Lanternari's knowledge of the '680 patent can be attributed to Nutrits.

70. On information and belief, in addition to direct infringement, Nutrits takes active steps to induce infringement of the '680 patent by others, including its retailers, distributors, and customers, and Nutrits takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, YouTube videos, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products.

71. On information and belief, Nutrits knows or should know that such activities induce others to directly infringe the '680 patent, including for example, by prompting them to

assemble the Accused Products in an infringing manner. As such, Nutrits has knowingly induced and continues to induce direct infringement of the '680 patent by its retailers, distributors, and consumers.

72. On information and belief, Nutrits also contributes to the infringement of the '680 patent by others, including its customers. Acts by Nutrits that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Nutrits of the components of Accused Products, including but not limited to, replacement nipples.

73. The components are not suitable for substantial noninfringing use.

74. On information and belief, Nutrits knows such components are especially adapted to infringe by use with other components to assemble the Accused Products.

75. Nutrits knew of the pending issuance and claims of the '680 patent prior to the filing of this Complaint.

76. Nutrits knew of the issuance of the '680 patent and yet performs and continues to perform acts that it knows, or should know, induces and/or contributes to the direct infringement of the '680 patent by third parties.

77. Nutrits continues to undertake its egregious infringing actions with knowledge of the '680 patent and despite an objectively high likelihood that such activities infringe the '680 patent, which has been duly issued by the USPTO and is presumed valid.

78. For example, since the date it received notice of the pending issuance and infringement of the '680 patent, Nutrits has been aware of an objectively high likelihood that continuing its actions with regard to the Accused Products will constitute and continue to constitute infringement of the '680 patent and that the '680 patent is valid.

79. Nutrits could not reasonably or subjectively believe that its actions do not constitute infringement of the '680 patent, nor could it reasonably or subjectively believe that the patent is invalid.

80. Despite that knowledge and subjective belief, and the objectively high likelihood that its continued actions constitute infringement, Nutrits has continued its activities despite the issuance of the '680 patent.

81. Nutrits's infringement of the '680 patent is willful.

82. Nutrits's infringement of the '680 patent has caused and continues to cause damage to Mayborn and Mayborn is entitled to recover from Nutrits compensation as a result of Nutrits's wrongful acts, including but not limited to a reasonable royalty and/or lost profits, and such other relief as may be appropriate.

83. Nutrits's infringement of the '680 patent is exceptional and entitles Mayborn to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

a) That at least claim 1 of the Asserted Patent has been and continues to be infringed by Nutrits;

b) That Nutrits's infringement of the '680 patent has been willful;

c) That the '680 patent is enforceable, eligible for patent protection, and not invalid;

d) An award of damages adequate to compensate Mayborn for the patent

infringement that has occurred, together with pre-judgment interests and costs and post-judgement interests and costs;

      e)      Lost profits to compensate Mayborn for Nutrits's infringement;

      f)      A permanent injunction preventing further infringement;

      g)      If a permanent injunction is not awarded, then an award of ongoing royalty for Nutrits's post-verdict infringement, payable on each product offered and/or imported by Nutrits that is found to infringe one or more of the Asserted Patents, and on all future products that are not colorably different from those found to infringe;

      h)      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

      i)      A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Mayborn of its costs and attorneys' fees incurred in this action; and

      j)      Further relief as the Court may deem just and proper.

|                          |                                                       |
|--------------------------|-------------------------------------------------------|
| Dated: August 22, 2023   | Respectfully submitted,                               |
|                          | FISH & RICHARDSON P.C.                                |
|                          | By: */s/ Matthew A. Colvin* |

Matthew A. Colvin
Texas Bar No. 24087331
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: 214-747-5070
Facsimile: 214-747-2091
Email: colvin@fr.com

John S. Goetz (pro hac vice forthcoming)
Maggie L. LaPoint (pro hac vice forthcoming)
7 Times Square Tower, 20th Floor
New York, NY 10036
Tel: (212) 765-5070
Fax: (212) 258-2291
Email: goetz@fr.com
Email: lapoint@fr.com

ATTORNEYS FOR PLAINTIFFS
MAYBORN (UK) LIMITED,
MAYBORN USA, INC. and
MAYBORN GROUP LIMITED